### EDWARDS v. GISI et al.
### No. 7 Civil.

District Court, D. Nebraska,
McCook Division.
April 13, 1942.

Daniel E. Owens, of Benkelman, Neb., and Cordeal, Colfer & Russell, of McCook, Neb., for plaintiff.

Leon L. Hines, of Benkelman, Neb., and Butler, James & McCarl, of McCook, Neb., for defendants.

DELEHANT, District Judge.

This case came to this court on removal from the District Court of Dundy County, Nebraska. It is a civil action for the recovery of damages arising from the death of plaintiff's intestate. It has now been tried to the court, sitting without a jury.

The plaintiff is, and his intestate was, a resident of Nebraska. The defendants are all residents of Colorado.

The defendant, Gisi, on August 31, 1938, was engaged in the general poultry, egg and produce business in Yuma, Colorado, and, in the course thereof, entered Nebraska as far as the towns of Benkelman and Haigler for the purpose of purchasing poultry and eggs from merchants there. These products were collected by the use of a motor truck, owned by Gisi and licensed in Colorado.

On the day mentioned the defendant, Carter, was a regular employee of Gisi, and his duties consisted of the driving of Gisi's truck to various towns and the purchase there for Gisi of poultry and eggs for which he paid with checks drawn by him on Gisi's account. The defendant, Wascher, was not a regular employee of Gisi, but had occasionally been hired by him for special work. On the morning of the day involved, he was so employed for the purpose of making with Carter a trip from Yuma, Colorado, to Benkelman, Nebraska, and thence back to Yuma, via Haigler, Nebraska. The sole duty assigned to him was helping to load and unload crates and products on the truck.

By the undisputed testimony it is shown that on August 31, 1938, at some time between eleven o'clock in the morning and noon, Carter and Wascher, in a new International, "Bull nosed", truck belonging to Gisi left Yuma and drove to Benkelman upon Gisi's business. Carter was driving the truck, transacting the business generally, and doing some of the loading and unloading. En route to Benkelman they stopped at a small town and left some equipment. At Benkelman Carter purchased, and he and Wascher loaded, some produce. Then they departed in the truck for Haig-

ler where Carter expected to buy and take delivery of more produce.

At Benkelman, Wascher asked Carter for permission to drive the truck; but Carter peremptorily refused the request. However, on departing from Benkelman, Carter, as driver, proceeded beyond the urban limits and then, on his own motion, stopped the truck, and told Wascher he might drive; whereupon Wascher assumed the driver's position and Carter took his place at Wascher's right on the seat in the driver's cab. No issue is made, either in the pleadings or by the evidence, of Wascher's general competency as a driver. This point has been suggested by counsel in oral argument and in briefs submitted to the court. But the testimony shows affirmatively that he was competent; was nineteen years of age, had driven automobiles regularly; had driven trucks for a distance of something like 120,-000 miles; had driven trucks for Gisi, within the town of Yuma but not beyond its limits, and never the new International truck; and held a Colorado driver's license.

From the point of change Wascher proceeded to drive on Highway 34 towards Haigler with Carter riding at his right. The day was clear and the road had a standard oil mat surface, and at the critical point thereon was straight and only mildly variable in elevation. Visibility along it was unimpeded.

At about 4:45 p. m., proceeding westward on the highway and at a point between five or six miles easterly from Haigler, Wascher overtook and passed a motor drawn truck of the "dirt dump" type, slightly altered for use in the transportation to and from the place of their employment, of a group of Works Progress Administration laborers, and then in use for that purpose, which was also proceeding westward. In passing the Administration truck on its south or left side, Wascher drove so dangerously close to it, that the extreme northerly parts of the Gisi truck came into contact with projecting parts of, or installations on, the south side of the Administration's truck, causing some impact between, and injury to, the two trucks.

Besides a driver and a foreman in the driver's seat, ten men were being transported home to Haigler from work, in the Administration's truck. Five men rode facing forward and sitting on each of two planks resting on the box of that truck. Plaintiff's intestate was sitting on the extreme south end of the more forward of the planks. In the contact between the two trucks his plank seat was pushed forward, and he was thrown violently between the two trucks and to the pavement, and sustained injuries from which he died early on the morning of the next day.

In this action plaintiff seeks damages resulting from the death of his intestate for the benefit of his admittedly dependent widow and next of kin, against all three defendants, predicating his demand against Carter and Wascher on a claim of negligence in their alleged actual operation of the Gisi truck, and against Gisi as their alleged principal in such operation.

Service of process was made on all of the defendants under the provisions of Section 20-530, C.S.Neb. 1929. On removal to this court, Carter and Gisi filed separate motions to quash this service of process upon the ground that Section 20-530, C. S.Neb. 1929, was not available as against them respectively. Those motions were overruled by Judge Munger on June 30, 1941.

After the ruling on their respective motions to quash service, Gisi and Carter filed separate answers, each of which preserved the issue raised in the answering defendant's motion to quash; admitted the death of plaintiff's intestate, leaving his designated wife and children, Gisi's participation generally in his business, his ownership of the International truck, and the mere fact that at the time involved, Carter and Wascher were Gisi's employees and that there was a collision between the two trucks; and denied all other allegations of the petition. Gisi's answer then denied liability on his part in the premises upon the basis of allegations substantially to the effect that at the time in question Carter, and Carter alone, was employed by Gisi to drive, and alone had authority to drive, Gisi's truck; that Wascher was not employed to drive the truck, had no duties to perform in connection with such driving and his driving of the truck at any time was without the permission of Gisi and outside the scope of his duties as an employee of Gisi. The circumstances thus alleged relative to the driving by Wascher of his truck, in addition to the general method of its employment, was also the principal ground of objection by Gisi against the availability of Sec. 20-530, C.S.Neb. 1929, as a means of obtaining personal jurisdiction over him. Carter specially denied liability to the plaintiff and his amenability to process under

20

Sec. 20-530, C.S.Neb. 1929, upon the facts alleged by Gisi respecting the relation of the defendants in the instant use and operation of the Gisi truck, and denied his participation in such use or operation.

The answers also contained certain other admissions and allegations that need not presently be mentioned.

The foregoing analysis of the facts and the issues presented is made in the persuasion that it will simplify and curtail the further discussion of the case and its issues.

This case arises out of the same accident which gave rise to the case of Rose v. Gisi, 139 Neb. 593, 298 N.W. 333. The only difference between the two cases lies in this, that in Rose v. Gisi the plaintiff was Herman Rose, who, on the Administration's truck, was sitting at the extreme south end of the rear plank provided for passengers, that is, immediately behind plaintiff's intestate, and that Herman Rose was severely, but not fatally, injured in the collision.

Prescinding, therefore, from the possibility that the evidence received on the trial of this case might—and the claim of plaintiff that it does—differ essentially from that received on the trial of Rose v. Gisi, supra, the actual facts in the two cases must be identical. And the defendants Gisi and Carter contend that the legal issues involved must be identical, and, in the light of Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, must receive identical solution, and that, in that behalf, this court must be inflexibly guided in its present judgment by the opinion of the Supreme Court of Nebraska in Rose v. Gisi, supra. With these legal conclusions, the plaintiff disagrees.

■ And first, in the matter of jurisdiction over the persons of the defendants Carter and Gisi, this court encounters no difficulty in affirming the amenability of both of them to process under Section 20-530, C.S.1929, both on the authority of Rose v. Gisi, supra, and by its independent conclusion upon the persuasiveness of pertinent decisions of other state courts construing comparable statutes. Jones v. Pebler, 371 Ill. 309, 20 N.E.2d 592, 125 A.L.R. 451. Principally in reliance upon the reasoning of that case and Rose v. Gisi, supra, the writer of this memorandum lately sustained the validity of service of process in an even more doubtful case in this division of the court. See Covert v. Hastings Manufacturing Company. D.C., 44 F.Supp. 773. The process being available and no irregularity in the technique pursued in its service being charged, the court holds that all defendants are personally within its jurisdiction. Finally, the pertinent evidence before the court on the trial essentially corresponds to the ex parte showing upon the motion to quash. Judge Munger held that showing sufficient to sustain personal jurisdiction over the defendants without effect, of course, upon the further question of legal liability to the plaintiff of the several defendants; and the judge presiding at the trial considers himself bound to follow that holding, which he also considers to be manifestly correct.

Upon the merits of the case, the court considers that a distinction in the matter of the liability of the defendants, severally, to the plaintiff has to be drawn by reason of the diversity of their relations to the employment of Gisi's truck.

The court finds that the collision which resulted in the death of plaintiff's intestate was proximately caused by actionable negligence on the part of Wascher in the operation of Gisi's truck; that pecuniary loss resulted to the next of kin of plaintiff's intestate from his death; and that the plaintiff is entitled to recover judgment herein against Wascher in an amount which will presently be discussed and determined. This conclusion would have been reached from the evidence at the trial of the case, independently of Rose v. Gisi, supra, but it also conforms to the opinion in that case.

■ The court finds, however, that there is no legal liability in favor of the plaintiff and against either Gisi or Carter for the negligence of Wascher. In reaching this conclusion the court, within the reasoning of Erie Railroad Company v. Tompkins, supra, feels compelled to follow the conclusions reached by the Supreme Court of Nebraska in Rose v. Gisi upon the same actual facts, and, as the court is persuaded, upon essentially the same testimony which is now before this court.

Let the last mentioned factor be considered first. Is the relevant evidence here essentially the same as that upon which Rose v. Gisi, supra, was determined? That question must be answered affirmatively. In reaching this conclusion, the writer of this memorandum has examined the opinion in Rose v. Gisi, supra, the briefs of the parties before the Supreme Court of Nebraska, the motion for a rehearing therein, and finally the bill of exceptions containing the

testimony on its trial in the District Court; and has considered those documents in comparison with the evidence adduced on this trial. Certainly the testimony in the Rose trial was more voluminous than that now under scrutiny. But in substance they are indistinguishable.

■ The plaintiff contends that the evidence, upon the issue of Carter's accountability now shows two factors fastening liability upon Carter, namely, his employment of the services of an incompetent substitute in the person of Wascher, and his culpable inattention in the crisis immediately preceding and continuing until the impact. Neither of these positions seems to be sustained by the evidence. Wascher's qualifications as a driver have already been adverted to in this opinion. If anything, they are here made to appear more clearly than they did in the Rose case. Certainly, no evidence imputing to Carter any knowledge or notice of incompetency as a driver on the part of Wascher is before the court. The direction by Gisi that Wascher should not be permitted to drive (vide infra) was not sufficient to warn Carter of any lack of skill in Wascher, or even to suggest substantively to this court that adequate skill was wanting. Such a direction is rather more indicative of the determination of an employer to preserve that order in the performance by his employees of their duties, without which any departmentalized business encounters confusion and irresponsibility. Nor does the evidence disclose on the part of Carter any failure to admonish or act in the sudden collision, which conceivably could have contributed to the tragedy. The contact between the trucks, though serious in its consequences, was physically slight, and marginal, and quite unanticipated. Wascher, the passing driver, was legally, all but bound to prevent the contact; but there is nothing in the testimony to justify the inference that Carter should have anticipated, or could have avoided, it. It may even be asserted, in the light of the testimony that any intrusion by Carter (then riding in the truck after the manner of a passenger), either by word or by act, would have constituted negligent intermeddling, calculated rather to promote, than to prevent, disaster.

So this court considers that the evidence before it on the issue of Carter's liability is essentially comparable to that on which the Supreme Court of Nebraska passed in the case of Rose v. Gisi, supra.

Upon the liability of Gisi it is suggested that the court is not compelled to believe the undisputed testimony of Carter and Gisi to the effect that, immediately prior to the departure of Carter and Wascher from Yuma, Gisi gave explicit directions to Carter that on the trip, he must not allow Wascher to drive the truck. Like testimony was given in both cases; and, in its very nature, it was not and could not have been directly negatived. Certainly, the court is not obliged to believe it; and this court approaches the consideration of it with a healthy skepticism. But it is not wholly uncorroborated by collateral circumstances. The caution was given, it is said, just as Wascher, in the plant of Gisi at Yuma, was backing the truck up to the loading dock. Counsel for plaintiff suggest that this circumstance impeaches the alleged caution, by showing that Wascher actually operated the truck in its owner's yard. To the court, however, it is persuasive in the opposite direction as an immediate reminder to Gisi that he should caution Carter not to relax in the performance of Carter's own duty as a driver, and not to suffer one unauthorized by Gisi to drive. Then, the truck was new, hardly accommodated to normal driving, a condition which readily prompts an owner to extreme caution. And in the plaintiff's case in chief, during the testimony of the driver of the Administration's truck, testimony was elicited to the effect that very shortly after the accident and during an interview with a deputy sheriff, the defendants Carter and Wascher or one of them said that "the fellow that was driving wasn't supposed to drive." These are not more than confirmatory circumstances, but they do tend to support the testimony that Gisi had forbidden the driving of the truck by Wascher. And the court is, therefore, obliged to find that under the testimony before it, the instruction was actually given. The Supreme Court of Nebraska was evidently sufficiently persuaded on the point to overturn a jury's verdict which conceivably rested on a contrary hypothesis.

■■ Besides, it may appropriately be remarked that, in the process of binding a master for the act or default of his servant, the burden rests upon him who asserts liability, of showing that the act or omission occurred within the general scope of the servant's employment. In that behalf, he is aided by a presumption which, in the absence of controverting testimony, will sustain a judgment once the general re-

lation of master and servant is established. But the presumption goes no farther than that and withdraws in the face of adverse concrete testimony showing limitation of the scope of employment.

Having determined that, relating to the liability of Gisi and Carter, there is no essential disparity between the testimony before this court and that underlying Rose v. Gisi, supra, the court considers itself compelled, by the reasoning in Erie Railroad Co. v. Tompkins, supra, to arrive at the same result as was reached by the Nebraska Supreme Court in Rose v. Gisi. This situation, indeed, presents the extreme state of facts demanding the application of the principle of the Erie case. For, if the published expressions of the court of last resort within the state where a controversy arises, and even (Stoner v. New York Life Insurance Company, 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284) of intermediate courts, and "other related adjudications and considered pronouncements" (Yoder v. Nu-Enamel Corporation, 8 Cir., 117 F.2d 488), upon comparable facts, must be regarded by the federal courts as determining the rights of the parties to a controversy, surely there can be no question of disparity in obtainable relief, as between the state and the federal forums when the facts are identical and the incident the same.

We have here no procedural question as to what forum will determine the quantum of evidence upon a controverted issue required for its submission to a jury. We have, rather, the substantive question as to whether a determined state of facts gives rise to a cause of action for damages in favor of a plaintiff and against a specific defendant. And that question, in our current federal jurisprudence is governed by the "law", as now broadly defined, of the state in which the facts arose. And why not? It was an indefensible anomaly, now fortunately ended, that a single incident would sustain an injured party's recovery if he were to sue in the state court on one side of a city street, but defeat him if he were incautious enough to file his action in a federal court of concurrent jurisdiction held in a building just across the same street. Lay people could not understand, and lawyers could not justify, that incongruity, not to say injustice.

Considering, therefore, that it must accept the reasoning and conclusions of the Nebraska court in the Rose case as its guide in this action and that it would be mere pedantry to quote at length from, or to analyze, that opinion, the court merely announces its conclusion that neither Carter nor Gisi is liable to the plaintiff under the testimony in this case. In harmony with the holding in Rose v. Gisi, supra, Gisi is held not to be liable because Wascher's driving of Gisi's truck was beyond, and outside, the scope of his employment, and involved work of a kind which Wascher had not by Gisi been directed or permitted, but had rather been forbidden to do. For negligence of a servant in an activity thus wholly unauthorized and even forbidden, the master is under no liability. Carter is considered to be free from liability, because he was not personally participating in the operation of the truck, was under no accountability as a responsible superior for Wascher's acts or omissions in its operation, and was not guilty of negligence either in permitting him to drive or through culpable and effective inattention or omission to act in the happening of the collision.

There remains the question of the amount of the judgment. Etna Edwards was fifty-seven years of age at the time of his death (not fifty, as alleged in the petition). He was in normal health and may be considered as having had a probable life expectancy of about sixteen years. He had dependents who might reasonably have been expected to enjoy his bounty for the full duration of his expectancy. However, he was a man of admittedly modest earning capacity, and, at the time of his death, received only forty dollars per month for his work. Nor is there any suggestion that this low income was other than a permanent expectation. A judgment based on the pecuniary loss to one's dependent immediate family, consequent on his death, can hardly be computed upon the assumption that all of his earnings were, or in the future would be, applied to the care of his dependents and none at all captured for his own maintenance and humble pleasure. Mindful, however, of the modest amount of the decedent's income, the court has arbitrarily assumed that he might be expected to devote as much as four hundred dollars per year to his family's care. And, without attempting to be inflexibly exact, the court has estimated the present worth of the probable contributions of the decedent during his remaining years, to his family's support to be Four Thousand Five Hundred Dollars.

Judgment will therefore be entered for the plaintiff and against the defendant, Victor Wascher, for Four Thousand Five Hundred Dollars together with the costs of the action; and for the dismissal with prejudice of this action as to each of the defendants Gerald M. Gisi and Floyd Carter.

Let counsel for the defendants prepare findings of fact and conclusions of law and a form of judgment, in harmony with this memorandum, and within the contemplation of Rule 52, Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and submit them to counsel for the plaintiff; and, if agreed upon, to the court for signature. If the findings and conclusions and the form of judgment be not agreed upon, then, upon notice, the same shall be presented to the court for settlement.